**Doris Chu LAM and Herman Lam, individually and as next friend of Winnie Lam, Plaintiffs–Appellants,**

v.

**Kimber M. SMITH, Defendant–Appellee.**

Supreme Court of Tennessee.

Dec. 19, 1994.

Dan T. Bing, Memphis, for plaintiffs-appellants.

James D. Causey, Jean E. Markowitz, Memphis, for defendant-appellee.

## OPINION

DROWOTA, Justice.

Doris Chu Lam, Herman Lam, and Winnie Lam appeal from the Court of Appeals' affirmance of the trial court's dismissal of their negligence action against Kimber Smith on statute of limitations grounds. The issue for our determination is whether the lower courts erred in holding that Tenn.Code Ann. § 28–1–111, the "suspension statute," was inapplicable and thus failed to toll the one-year statute of limitations because the defendant Smith could have been served pursuant to Tenn.Code Ann. § 20–2–203, the "non-resident motorist statute." We hold that the lower courts did err, and therefore reverse the judgment of the Court of Appeals and remand the case for further proceedings.

## FACTS AND PROCEDURAL HISTORY

The Lams were involved in an automobile accident allegedly caused by Smith's negligence on January 5, 1989. On December 28, 1989, the Lams filed a negligence action against Smith, and process, addressed to Smith at "7869 National, Millington, Tennessee 38053," was issued that same day. On January 8, 1990, however, the process was returned with the notation "moved." On May 11, 1990, process was again issued to Smith at the same address, and on May 17, it was returned with the same notation. In September 1990, the Lams' attorney requested information from Smith's insurance company as to her whereabouts so that service could be effected. When the insurer responded that the only address the company had for Smith was the Millington address, the Lams hired a private process server to serve the complaint and summons at that address on September 28, 1989. This attempt was also unsuccessful, as the process was returned on October 10, 1989, with the notation "moved" thereon.

In February 1991 the Lams hired a private detective agency in an attempt to locate Smith. This agency failed to produce any information as to her whereabouts, so on April 2, 1991, the Lams again attempted to serve Smith at the Millington address. Again, they were unsuccessful.

In September 1991 the Lams hired a second private detective agency and on September 17, that agency advised the Lams that Smith was residing in North Carolina. The plaintiffs then filed an amended complaint alleging that defendant was a non-resident of the state of Tennessee and another summons was issued on September 27, 1991, this time to the Tennessee Secretary of State, the designated agent for service of process for non-resident motorists. Tenn.Code Ann. § 20–2–203. Process was returned with service on defendant consummated on October 22, 1991. Subsequently, in answering interrogatories propounded to her, Smith alleged that she had lived in Millington, Tennessee, at the time of the accident, but had moved to Jacksonville, North Carolina, on February 15, 1989. Smith also alleged that she had moved because her husband was employed by the United States Marine Corps and had been transferred to North Carolina.

On April 28, 1992, Smith filed a motion to dismiss the action, arguing that since more than six months had elapsed between the September 28, 1990, and the April 2, 1991, service attempts, the plaintiffs had not complied with Rule 3 of the Tennessee Rules of Civil Procedure. Because this rule had not

been followed, the defendant urged, the plaintiffs could not rely on their original filing to toll the one-year statute of limitations applicable to personal injury actions. The trial court agreed and granted defendant's motion to dismiss. The Court of Appeals affirmed this judgment.

The Lams then filed an application for permission to appeal with this Court pursuant to Rule 11, Tenn.R.App.P. We granted the application to address this procedural issue of first impression.

### ANALYSIS

At the time the complaint was filed in this case, Rule 3, Tenn.R.Civ.P., provided as follows:

All civil actions are commenced by filing a complaint with the court. An action is commenced within the meaning of any statute of limitations upon such filing of a complaint, whether process be returned served or unserved; but if the process is not served or not returned within 30 days from issuance, regardless of the reason, plaintiff, if he wishes to rely upon the original commencement as a bar to the running of the statute of limitations, must either prosecute and continue the action by applying for and obtaining issuance of new process from time to time, each new process to be obtained within 6 months from the issuance of the previous one, or plaintiffs must recommence the action within one (1) year from issuance of the initial process not served or not returned within 30 days of issuance.

The Lams concede that more than six months elapsed between the September 1990 and the April 1991 attempts to issue process, and they concede that they may not rely upon the initial filing of the complaint on December 28, 1989, to toll the statute of limitations. Rather, they argue that Rule 3 is irrelevant to their situation because of the emphasized language in the "suspension statute," Tenn.Code Ann. § 28-1-111:

If at any time any cause of action shall accrue against any person who shall be out of this state, the action may be commenced within the time limited therefor, after such person shall have come into the state; *and,*

*after any cause of action shall have accrued, if the person against whom it has accrued shall be absent from or reside out of the state, the time of his absence or residence out of the state shall not be taken as any part of the time limited for the commencement of the action.*

The Lams specifically argue that since Smith left the state in February 1989, a fact of which they were unaware until September 1991, the period from February 1989–September 1991 should not be counted "as any part of the time limited for the commencement of the action." Thus, the Lams conclude that their action is timely because the one-year statutory period of limitations did not begin to run until September 1991.

Smith counters by first pointing to the "non-resident motorist statute," Tenn.Code Ann. § 20-2-203, which provides in pertinent part as follows:

(a)(1) Any owner, chauffeur or operator of any motor vehicle that is not licensed under the laws of this state, or any nonresident who, acting in behalf of the owner of any such vehicle, uses or causes to be used any such motor vehicle in this state, or any nonresident of the state of Tennessee who shall hire or procure the use of a motor vehicle licensed under the laws of this state, for temporary use herein, and who shall make use of the privilege, hereby extended to nonresidents of the state to operate such vehicle on highway or highways within the state, shall be deemed thereby to constitute the secretary of state of this state as agent for acceptance of service of process in any civil action brought by any person against the owner, chauffeur or operator of such motor vehicle, or nonresident, arising out of any accident or injury occurring in this state in which such vehicle is involved.

(a)(2) Such use of a highway shall be treated as an agreement on the part of such person that such service of process shall have the force and validity of personal service on the owner, chauffeur, or operator of such motor vehicle, or nonresident within the jurisdiction of this state and the county of action.

(a)(3) "Nonresident," as used herein, includes any person who though a resident of this state or who was the owner or operator of a motor vehicle properly registered and licensed under the laws of this state when the motor vehicle accident or injury occurred, has been absent from the state of Tennessee for at least thirty (30) days next preceding the day on which process shall be lodged with the secretary of state as hereinafter provided in § 20–2–205.

Smith then argues that because she fits the statutory definition of "nonresident," the Lams could have served her pursuant to the § 20–2–203 method at any time after February 15, 1989. This is crucial, Smith says, because both this Court, in *Arrowood v. McMinn County*, 173 Tenn. 562, 121 S.W.2d 566 (1938), and the Court of Appeals, in *Carr v. Borchers*, 815 S.W.2d 528 (Tenn.App.1991), have held that when a valid method of serving process to an out-of-state defendant is available, such as the "nonresident motorist statute," the plaintiff may not rely upon the "suspension statute" to toll the statute of limitations. Smith argues that this rule applies regardless of whether the plaintiff is actually aware that the defendant is a nonresident.

In assessing the merits of the parties' arguments, we must first examine the *Arrowood* and *Carr* decisions. In *Arrowood* the plaintiff's son was killed by a non-resident motorist as he attempted to cross the highway after alighting from a school bus. The accident occurred on August 11, 1936, and the plaintiff, after qualifying as administratrix of her son's estate on January 29, 1937, brought a negligence action against the McMinn County Board of Education and the bus driver. For reasons that are not explained in the opinion, the plaintiff did not bring suit against the non-resident motorist until January 31, 1938—just after the one-year statutory period of limitations applicable to the case had expired. The plaintiff served the nonresident motorist defendant pursuant to the forerunner of § 20–2–203 in February 1938.

The trial court dismissed the action as to the nonresident motorist defendant on stat-ute of limitations grounds, and this Court affirmed. In its opinion, the *Arrowood* court first pointed out several situations in which the legislature had specifically provided a method of serving nonresident defendants. Then, in rejecting the plaintiff's argument that the "suspension statute" tolled the statute of limitations for the period that the motorist defendant resided out-of-state, the Court stated:

> It is obvious that under [the forerunner to § 20–2–203], providing for service on nonresident operators on highways in this state through the Secretary of State, suit could have been commenced and service had at any time within the limitation of one year. The absence or nonresidence of the defendants in no way obstructed or prevented suit against or service upon them. The applicable principle laid down by our decisions is that when the remedy of the suitor is complete and unaffected by the absence of the defendant, when his nonresidence does not affect the right to sue, Code, Section 8581 (Act of 1865) providing that 'the time of his absence or residence out of the state shall not be taken as any part of the time limited for the commencement of the action' is without application.

121 S.W.2d at 567.

In *Carr*, the parties were involved in an automobile accident in Bradley County on October 10, 1986, and the plaintiff filed an action in that county on April 8, 1987. Although the defendant was a resident of Bradley County at the time of the accident, the process addressed to her Bradley County address was returned on April 15, 1987, with the notation "not to be found at the above listed address." On May 4, 1987, the plaintiff attempted to serve the defendant by certified mail at the Bradley County address, but the process was returned with the notation that defendant had "moved, not forwardable." Thereafter, on August 7, 1987, the plaintiff caused process to be served on the Secretary of State pursuant to § 20–2–203. The Secretary of State returned, on September 9, an affidavit to the Bradley County Circuit Court Clerk stating that the process had been mailed to the defendant at a California ad-

dress provided by the plaintiff, but that the letter had been returned unclaimed.

After several more attempts, the defendant was finally served at a Chicago address on November 19, 1989. In February 1990 the defendant filed a motion for summary judgment, arguing that the action was barred by the statute of limitations and the plaintiff's failure to adhere to Rule 3, Tenn.R.Civ. P.; and the trial court granted the motion.

The Court of Appeals reversed the judgment and remanded the case for further proceedings. In its analysis, the Court cited *Arrowood* to establish that the suspension statute could not be invoked by the plaintiff because "[that] statute has been judicially construed to be inapplicable to nonresident motorists who may be served through the Secretary of State under the provisions of T.C.A. § 20–2–203." 815 S.W.2d at 531. The Court then noted that the Secretary of State had received the process well within the one-year statutory period of limitations, but that because of the erroneous California address supplied to the secretary by the plaintiff, the defendant had not received actual notice of the lawsuit until well after the expiration of the limitations period. The Court proceeded to ask and answer the question before it as follows:

> Does service on the Secretary of State, absent requisite notice to the defendant constitute sufficient service of process to toll the running of the statute of limitations? We hold that it does. Were it not true, a defendant, under the circumstances of this case could not be served under the provisions of T.C.A. § 20–2–203 due to lack of knowledge of his whereabouts. If the defendant cannot be served under T.C.A. § 20–2–203 or any other 'long-arm' statute because his whereabouts is unknown, then absence from the state, should, in and of itself, toll the statute of limitations. Justice demands that the defendant not be allowed to hide behind the provisions of T.C.A. § 20–2–203 to prevent the application of T.C.A. § 28–1–111 (Suspension during absence from state) while at the same time escaping service under T.C.A. § 20–

2–203 because plaintiff is unable, with due diligence, to discover his whereabouts.

.    .    .    .    .

We are of the opinion and hold that service of process on the Secretary of State, pursuant to T.C.A. § 20–2–203, is sufficient to toll the running of the statute of limitations, provided the plaintiff uses or has used due diligence to ascertain the whereabouts of the defendant and to serve the requisite notice to make service consummate.

815 S.W.2d at 532.

Despite Smith's contention that this case is controlled by *Arrowood* and *Carr*, this is actually a case of first impression, for neither *Arrowood* nor *Carr* involved a situation where the plaintiff was unaware of the fact that the defendant was, or had become, a nonresident. *Arrowood* is unclear on this point; and the *Carr* plaintiffs definitely knew that the defendant had become a nonresident because they supplied the Secretary of State with an address in California for the purpose of consummating the service. Although the California address was ultimately found to be incorrect, the plaintiffs were nevertheless clearly aware that the defendant no longer resided in Tennessee.

Therefore, *Arrowood* and *Carr*, standing alone, do not establish the sweeping proposition that if a method is available for serving a nonresident defendant, regardless of the plaintiff's knowledge of the defendant's non-residence, the suspension statute cannot serve to toll the statutory period of limitations. Furthermore, we do not believe that the *Arrowood* rule should be extended to cover a situation where the plaintiff has no knowledge that the defendant has become a nonresident.

There are several reasons for this conclusion, the most important having to do with the language of the suspension statute and the fundamental purpose of the *Arrowood* rule. On its face, the suspension statute is unlimited; theoretically a plaintiff may rely upon the statute to toll the limitations period for as long as a defendant remains out-of-state. However, this open-endedness potentially raises the same problems that a statute

of limitations is designed to prevent: crucial witnesses may die or otherwise become unavailable, witnesses' memories may fade, and so forth if the action is held in abeyance for too long a period of time. The *Arrowood* rule was formulated to avoid these difficulties by limiting the application of the suspension statute to situations where it is truly necessary; or, to use the language of the *Arrowood* court, to situations where the plaintiff would not have a "complete and unaffected remedy" if not allowed to rely upon the statute. Since the *Arrowood* rule is intended to prevent a plaintiff from using the suspension statute to toll indefinitely the limitations period while disregarding valid available methods of serving a nonresident defendant, the rule essentially punishes the plaintiff for failing to take advantage of available methods of service. Therefore, it follows that the rule is implicitly based on the plaintiff's *conscious disregard* of those possible methods of service.

■ With these considerations in mind, it becomes clear that the proper question to be asked in deciding if the *Arrowood* rule applies in a particular situation is *not* whether a method was available, in the abstract, to serve the nonresident defendant. Rather, the question is whether the plaintiff has unjustifiably failed to use that method of service under the circumstances of the case. If the plaintiff has used due diligence in trying to ascertain the location of the defendant, but is still unaware of the defendant's nonresident status, the *Arrowood* rule should not prevent the invocation of the suspension statute.

■ Smith's expansive reading of *Arrowood* and *Carr* is flawed on another ground. That view necessarily assumes that a plaintiff, who has no knowledge of a defendant motorist's nonresident status, may, after an unsuccessful attempt to serve the defendant at an instate address, simply cause process to be issued to the Secretary of State pursuant to § 20–2–203, and thereby toll the limitations period. Such an assumption, however, conflicts with § 20–2–203(a)(3), which states that: " 'nonresident,' as used herein, includes any person who though a resident of this state . . . when the motor vehicle accident or

injury occurred, *has been absent from the State of Tennessee for at least thirty (30) days next preceding the day on which process shall be lodged with the secretary of state . . .*" (emphasis added). This section implicitly requires that the plaintiff have some *reasonable* basis for believing that the defendant has moved out of state; and the plaintiff may not assume that the defendant has moved out of state merely because the process issued to an instate address is returned with a notation such as "moved" or the like. If we were to so hold, every plaintiff who was unsuccessful in an instate attempt at service would immediately cause process to be issued to the Secretary of State to avoid the effect of the sweeping *Arrowood* rule. Such an interpretation would greatly burden the Secretary of State's office and would not further the valid objectives for which the *Arrowood* rule was created.

Finally, we note that Smith's interpretation of the *Arrowood* rule would effectively force a plaintiff to invoke § 20–2–203 without being able to give the Secretary of State any address for the defendant for purposes of "consummating" the service. This is anomalous, however, because "the plaintiff has a duty to furnish the Secretary with the defendant's correct address," *Vance v. Blegan,* 225 Tenn. 282, 466 S.W.2d 223, 226 (1971), and thus may not cause process to be issued to the secretary without providing, in good faith, an address for the requisite consummation of service.

■ In conclusion, we hold that the *Arrowood* rule should not automatically apply to a situation where the plaintiff has no knowledge that the defendant is an out-of-state resident. *Rather, the plaintiff may rely on the suspension statute if the failure to utilize the method of service is justified under the circumstances of the case.* In other words, if the plaintiff has used due diligence in trying to ascertain the location of the defendant, he is not precluded from relying upon the suspension statute. Therefore, because the Lams have clearly exhibited due diligence in trying to ascertain the whereabouts of Smith, the holding of the Court of Appeals is reversed. This case is remanded

to the trial court for further proceedings in accordance with this opinion.

ANDERSON, C.J., REID and BIRCH, JJ., and FONES, Special Justice, concur.